# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN ANDERSON, and<br>LAURA ANDERSON,<br><br>     Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND<br>CASUALTY COMPANY,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 6:25-CV-184-JAR<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter comes before the Court on defendant State Farm Fire and Casualty Company's ("State Farm") motion for summary judgment [Dkt. 49][1] and plaintiffs Kevin and Laura Anderson's motion for partial summary judgment [Dkt. 50], both brought under Fed. R. Civ. P. 56. By consent of the parties [Dkt. 9], and pursuant to Fed. R. Civ. P. 73(a) and 28 U.S.C. § 636(c)(1), the undersigned United States Magistrate Judge exercises complete jurisdiction over this action through trial and the entry of final judgment.

## I.  UNDISPUTED MATERIAL FACTS [2]

State Farm issued homeowners policy No. 36-B8-Y094-4 (the "Policy") covering plaintiffs' residence in Broken Arrow, Oklahoma with effective dates from July 28, 2022 to July 28, 2023, subject to a $1,351.00 deductible.[3] The Policy provides, in

---

[1] For clarity and consistency herein, when the Court cites to the record, it uses the pagination and document numbers provided by CM/ECF.

[2] Unless otherwise noted, the following facts are undisputed for summary judgment purposes.

[3] [Dkt. 49 at 6, ¶ 1; Dkt. 54 at 8, ¶ 1; Dkt. 50 at 8, ¶¶ 1, 3; Dkt. 55 at 7, ¶¶ 1, 3].

relevant part:

> **We** will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include, and we will not pay for, any **diminution in value**.

[Dkt. 49-2 at 15 (emphasis in original)]. The Policy also contains a suit-limitation clause:

> **Suit Against Us**. No action will be brought against **us** unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

[*Id.* at 25 (emphasis in original)].

On June 21, 2023, plaintiffs submitted a claim to State Farm for storm damage with a reported date of loss of June 17, 2023.[4] External Claims Resource Emmanuel Ogboko inspected the roof on July 10, along with Kevin Anderson and plaintiffs' contractor, Adriel Sigala of Conrad's Roofing & Construction.[5] That same day, State Farm advised by letter that the loss did not exceed plaintiffs' $1,351.00 deductible and enclosed a roof repair estimate totaling $1,081.37.[6]

Austin Bowman ("Bowman"), who later replaced Adriel Sigala as Conrad's Roofing's contractor on the claim, inspected the roof on January 29, 2024, and pulled a shingle for purposes of assessing repairability and compatibility. [Dkt. 54-3 at 15-16 (48:17-49:23), 20-21 (59:15-60:17)]. On February 7, Bowman notified State Farm

---

[4] [Dkt. 49 at 7, ¶ 4; Dkt. 54 at 8, ¶ 4; Dkt. 50 at 9, ¶¶ 5, 9; Dkt. 55 at 7-8, ¶¶ 5, 9].

[5] [Dkt. 49 at 7, ¶ 7; Dkt. 54 at 8, ¶ 7; Dkt. 50 at 10, ¶ 12; Dkt. 55 at 8, ¶ 12].

[6] [Dkt. 49 at 8, ¶ 8; Dkt. 54 at 8, ¶ 8; Dkt. 50 at 11, ¶ 20; Dkt. 55 at 9, ¶ 20]; *see also* [Dkt. 49-5 ("We have completed our evaluation of your claim and have determined your loss does not exceed your $1,351.00 deductible. Therefore, we are unable to make a payment on this claim.")].

that he had pulled a shingle to be sent to Roofing Locator Service ("RLS").[7] That same day, Claim Specialist Khalid Fouda reviewed Bowman's inspection notes and photographs. He recorded that a shingle sample was unnecessary; the eight-year-old roof appeared in "above average" condition; the "weatherwood"-colored, three-tab shingle with five-inch exposure was available from multiple manufacturers; and the inspection photographs should be shared with RLS "for additional information."[8]

On February 23, 2024, Bowman asked State Farm to identify the shingle type so he could locate a compatible replacement. [Dkt. 49 at 8, ¶ 12; Dkt. 54 at 9, ¶ 12]. On February 29, Bowman emailed State Farm an ITEL report confirming availability of a matching shingle. [Dkt. 49 at 8-9, ¶ 13; Dkt. 54 at 9, ¶ 13]. On March 1, State Farm advised Bowman that the ITEL report was acceptable and confirmed Khalid Fouda's conclusion that a matching shingle was available. [Dkt. 49 at 9, ¶ 14; Dkt. 54 at 9, ¶ 14]. On March 8, Bowman emailed photographs and a video to State Farm and reported that removing shingles was causing additional damage. [Dkt. 50 at 12, ¶ 29; Dkt. 55 at 10, ¶ 29].

On April 11, 2024, State Farm emailed Bowman that, after reviewing the photographs and video, there was insufficient evidence to show the roof was not repairable, and requested a video of an actual repair attempt.[9] Bowman sent a repair-attempt video on May 24.[10] On May 28, after reviewing the video, State Farm advised

---

[7] [Dkt. 49 at 8, ¶ 10; Dkt. 54 at 9, ¶ 10; Dkt. 50 at 12, ¶ 28; Dkt. 55 at 10, ¶ 28].
[8] [Dkt. 49 at 8, ¶ 11; Dkt. 54 at 9, ¶ 11; Dkt. 50 at 12, ¶ 28; Dkt. 55 at 10, ¶ 28].
[9] [Dkt. 49 at 9, ¶ 17; Dkt. 54 at 9, ¶ 17; Dkt. 50 at 12-13, ¶ 31; Dkt. 55 at 10, ¶ 31].
[10] [Dkt. 49 at 9, ¶ 18; Dkt. 54 at 9, ¶ 18; Dkt. 50 at 12-13, ¶ 31; Dkt. 55 at 10, ¶ 31].

Bowman that the roof remained repairable and that State Farm stood by its decision to write for repair rather than replacement.[11]

On December 9, 2024, Holbrook Leavitt & Associates notified State Farm that it represented plaintiffs.[12] On December 16, plaintiffs' counsel submitted a sworn proof of loss statement that the full cost of roof replacement was $17,700.33, based on Bowman's estimate.[13] On December 18, State Farm emailed counsel copies of the Policy and declarations, and advised: "We have received your total roof replacement estimate. At this time, a total roof replacement is not warranted."[14] Conrad's Roofing completed roof replacement on or around February 16, 2026, and issued an invoice to plaintiffs for $17,700.33. [Dkt. 50-19].

## II.    PROCEDURAL HISTORY

Plaintiffs initiated this action on March 6, 2025 in the District Court of Wagoner County, Oklahoma. [Dkt. 2-1]. State Farm removed the case to this Court under 28 U.S.C. §§ 1332(a)(1), 1441, and 1446. [Dkt. 2]. Plaintiffs amended their complaint on July 1, 2025, asserting two claims: breach of contract, based on State Farm's alleged failure to pay covered storm-loss benefits, and bad faith, based on State Farm's alleged failure to deal fairly and in good faith with insureds. [Dkt. 21].

On April 17, 2026, State Farm moved for summary judgment, arguing that the breach of contract claim is barred by the Policy's one-year suit limitation provision

---

[11] [Dkt. 49 at 9, ¶ 19; Dkt. 54 at 9, ¶ 19; Dkt. 50 at 13, ¶ 32; Dkt. 55 at 11, ¶ 32]; *see also* [Dkt. 49-11 ("[A]t this time, State Farm stands with its decision to write for the repair of the roof.")].
[12] [Dkt. 49 at 10, ¶ 20; Dkt. 54 at 9, ¶ 20; Dkt. 50 at 13, ¶ 34; Dkt. 55 at 11, ¶ 34].
[13] [Dkt. 49 at 10, ¶ 22; Dkt. 54 at 10, ¶ 22; Dkt. 50 at 13, ¶ 35; Dkt. 55 at 11, ¶ 35].
[14] [Dkt. 49 at 10, ¶ 23; Dkt. 54 at 10, ¶ 23; Dkt. 50 at 13, ¶ 35; Dkt. 55 at 11, ¶ 35].

and that the bad-faith claim fails as a matter of law. [Dkt. 49]. Plaintiffs responded [Dkt. 54], and State Farm replied [Dkt. 62]. Plaintiffs also moved for summary judgment on April 17, 2026, seeking judgment on their breach of contract claim and partial summary judgment on bad-faith liability. [Dkt. 50]. State Farm responded [Dkt. 55], and plaintiffs replied [Dkt. 58].

### III.  STANDARDS OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the Court's task "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (*quoting Anderson*, 477 U.S. at 249). In making that determination, the Court must view the evidence "in the light most favorable to the opposing party." *Id*. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Insu. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

When, as here, the parties file cross-motions for summary judgment, the Court considers each motion separately and applies the same standard to each. *See Fox v. Transam Leasing, Inc.*, 839, F.3d 1209, 1213 (10th Cir. 2016).

In diversity cases, federal courts apply state substantive law and federal procedural law. _Racher v. Westlake Nursing Home Ltd. P'ship_, 871 F.3d 1152, 1163 (10th Cir. 2017). Because the Policy contains no choice-of-law provision, it must be interpreted according to the law and usage of the place where it is to be performed. 15 O.S. § 162. Oklahoma law requires that contracts be interpreted "as a whole so as 'to give effect to the mutual intention of the parties, as it existed at the time of contracting.'" _Dillon Family & Youth Servs., Inc. v. Dep't of Human Servs._, 965 F.3d 932, 933-34 (10th Cir. 1992) (_quoting_ 15 O.S. § 152). The language in a contract is given its plain and ordinary meaning unless some technical term is used in a manner meant to convey a specific technical concept. 15 O.S. § 160.

## IV.    STATE FARM'S MOTION FOR SUMMARY JUDGMENT

The Court first considers State Farm's suit-limitation defense to the breach of contract claim, then addresses whether State Farm is entitled to summary judgment on plaintiffs' bad-faith claim.

### A.    BREACH OF CONTRACT

State Farm relies on the Policy's one-year suit-limitation clause, which provides that "[a]ny action by any party must be started within one year after the date of loss or damage." [Dkt. 49-2 at 25]. Plaintiffs allege a June 2023 date of loss and filed suit in March 2025. On its face, the breach of contract claim was not brought within one year of the date of loss or damage. Plaintiffs contend, however, that (1) waiver and estoppel preclude State Farm from invoking the suit-limitation clause, (2) the one-year contractual limitation is void under Oklahoma law because this coverage

is subject to a two-year minimum limitations period, and (3) 36 O.S. § 1250.5(7) effectively requires a limitations period of at least two years for wind and hail roof claims. The Court addresses each argument in turn.

### 1. Waiver and Estoppel

Plaintiffs argue that State Farm's conduct in adjusting the claim waived, or equitably estops State Farm from asserting, the suit-limitation provision. [Dkt. 54 at 17-19]. *See Prudential Fire Ins. Co. v. Trave-Taylor Co.*, 1944 OK 272, ¶ 8, 152 P.2d 273, 275 (defining waiver); *Sanchez v. City of Sand Springs*, 1990 OK 26, ¶ 7, 789 P.2d 240, 241 (defining equitable estoppel). They rely on Oklahoma decisions recognizing that an insurer may waive a contractual limitations provision, or be estopped to assert it, when the insurer's conduct reasonably leads the insured to believe the claim will be resolved without litigation and thereby lulls the insured into delaying suit.[15] Plaintiffs emphasize that State Farm never issued what they describe as a "clear denial," continued to invite additional information, treated the claim as a covered loss, and never advised them of any deadline to sue. In their view, these circumstances constitute at least the "slight evidence" of waiver recognized in *Old Sur. Life Ins. Co. v. Miller*, 1958 OK 291, ¶ 19, 333 P.2d 504, 508.

State Farm responds that the dispositive question is not whether it used the word "denial," but whether its conduct prevented plaintiffs from filing suit within the

---

[15] *See, e.g., Prudential,* ¶ 8, 152 P.2d at 275 (holding insurer waived contractual limitation where it failed to deny liability in time for insured to file suit within the policy period); *Agric. Ins. Co. of Watertown v. Iglehart*, 1963 OK 214, ¶ 5, 386 P.2d 145, 146 (concluding insurer waived limitation where it never clearly denied liability but merely disputed the amount of loss and thus did not afford insured a timely opportunity to sue); *Okla. Farm Bureau Mut. Ins. Co. v. Lay*, 1965 OK 5, ¶ 8, 398 P.2d 506, 508 (approving submission of waiver to jury where insurer said it would settle and requested a repair estimate, conduct that could have lulled insurer into delaying suit beyond one year).

contractual period. [Dkt. 49 at 12-14; Dkt. 62 at 2-5]. It cites federal decisions applying Oklahoma law that frame the waiver inquiry around whether the insurer's conduct prohibited or practically prevented the insured from bringing suit within the contractual limitations period[16] and argues that nothing in its communications suggested it would settle the claim, waive the limitation, or delay its coverage position. State Farm further notes that plaintiffs still had ample time to initiate litigation before June 17, 2024, and contends that continued claim handling and reconsideration, without more, cannot create waiver or estoppel where the insured retains a meaningful opportunity to sue.[17]

The Court agrees that, under Oklahoma law as applied in recent federal cases, the focus is whether the insurer's conduct prevented or reasonably induced the insured to refrain from filing suit within the contractual period, not simply whether the insurer continued to communicate or avoided the word "denial." Here, the material facts regarding the timing and content of State Farm's communications are not genuinely disputed. State Farm issued its loss-below-deductible determination on July 10, 2023 and thereafter maintained its position that the roof was repairable, including in its May 28, 2024 email following review of plaintiffs' additional

---

[16] *See, e.g.*, <u>*Marshall v. State Farm Fire & Cas. Co.*</u>, No. CIV-24-780-JD, 2025 WL 817606, at \*3 (W.D. Okla. Mar. 13, 2025) (explaining that the waiver analysis centers on whether insurer's conduct caused insured to be unable to initiate a lawsuit within the limitations period); <u>*Parrish v. Farmers Ins. Co.*</u>, No. CIV-21-280-GKF-SH, 2022 WL 3139750, at \*7 (N.D. Okla. Aug. 5, 2022) (same).

[17] *See* <u>*Aetna Ins. Co. v. Wewoka Realty & Tr. Co.*</u>, 1924 OK 588, ¶¶ 2-3, 230 P. 738, 738-39 (rejecting waiver based on continued claim handling where insurer neither represented it would settle nor acknowledged liability and insured remained free to bring suit within the limitation period); <u>*Doe v. Indep. Sch. Dist. No. I-89*</u>, 1988 OK 115, ¶¶ 7, 14-15, 780 P.2d 659, 661-62 (holding equitable estoppel inapplicable where insurer neither admitted liability nor negotiated settlement, engaged in no false or misleading conduct, unequivocally rejected the claim, and insured still had several months to sue).

submissions. Plaintiffs identify no affirmative representation that State Farm would settle their claim or pay for a full roof replacement if they refrained from suit, and there is no evidence that State Farm asked them to delay litigation while discussions continued. Rather, the record reflects a straightforward dispute over the amount and extent of covered loss, with plaintiffs' contractor advocating replacement and State Farm adhering to its repairability determination.

In *Prudential* and *Iglehart*, the insurer's conduct effectively deprived the insured of a realistic opportunity to sue, either by failing to take a definitive coverage position within the limitation period or by conduct reasonably implying settlement while withholding payment. *Prudential*, ¶ 8, 162 P.2d at 275; *Iglehart*, ¶ 5, 386 P.2d at 146. Those circumstances differ materially from this case, where State Farm communicated its adverse coverage position roughly one month after the loss and reaffirmed that position approximately three months before the contractual deadline.[18] Likewise, *Lay* involved an insurer that expressly told the insured it would settle and requested a repair estimate but never paid, conduct the Oklahoma Supreme Court deemed sufficient to submit waiver to the jury. *Id*. ¶¶ 3-8, 398 P.2d at 507-08. Plaintiffs point to no comparable assurance here. To the contrary, their own briefing refers to State Farm's July 2023 and May 2024 communications as "denials" of their claim, undermining any contention that they reasonably believed State Farm had not taken a firm adverse position. *See* [Dkt. 54 at 27, 28].

---

[18] *See* *Roemer v. State Farm Fire & Cas. Co.*, No. CIV-06-663-CVE-PJC, 2007 WL 527863, at *3 (N.D. Okla. Feb. 14, 2007) (holding *Prudential* inapplicable where, even assuming investigative delay, insured still had adequate time to file suit within the limitations period).

Plaintiffs also invoke 36 O.S. § 1250.7(E), which requires insurers to give written notice of applicable time limits when they continue or delay negotiations with non-attorney claimants, and contend that State Farm's failure to provide such notice supports waiver or estoppel. The Court is not persuaded that this provision, which appears in the Unfair Claims Settlement Practices Act ("UCSPA"), alters the waiver analysis. Oklahoma and federal courts have recognized that the UCSPA does not create a private right of action and that alleged violations of its provisions do not, by themselves, resolve limitations issues. *See, e.g.*, <u>Walker v. Chouteau Lime Co.</u>, 1993 OK 35, ¶ 1, 849 P.2d 1085, 1086; <u>Gaddy v. State Farm</u>, No. CIV-25-367-MTS, 2025 WL 3124451, at *4 (N.D. Okla. Nov. 7, 2025). Against that backdrop, State Farm's failure to mention the one-year limitation in its claim communications, without more, does not amount to misleading conduct sufficient to excuse compliance with an unambiguous suit-limitation clause.[19]

On this record, no reasonable factfinder could conclude that State Farm's conduct prevented plaintiffs from filing suit within one year of the June 2023 loss or reasonably induced them to forego doing so. Plaintiffs had clear notice of State Farm's position well within the limitations period and many months in which to commence an action. The Court therefore concludes that plaintiffs' waiver and estoppel theories do not bar enforcement of the Policy's suit-limitation provision.

---

[19] Oklahoma law imposes a duty on insureds to read and know their policies. *See* <u>Williams v. TAMKO Bldg. Prods., Inc.</u>, 2019 OK 61, ¶ 9, 451, P.3d 146, 151 (presuming a party who had the opportunity to read a contract but did not is nonetheless bound by its terms); <u>Thurston v. State Farm Mut. Auto. Ins. Co.</u>, 2020 OK 105, ¶ 22, 478 P.3d 415, 421 (same); <u>Nat'l Fire Ins. Co. of Hartford v. McCoy</u>, 1951 OK 379, ¶ 8, 239 P.2d 428, 430 (holding an insured has a duty to read the policy and is estopped from denying knowledge of its terms absent proof that trick or fraud induced the failure to read).

### 2.    Validity of One-Year Suit-Limitation Clause

Plaintiffs next argue that the one-year suit-limitation clause is void because it conflicts with Oklahoma's statutory scheme governing limitations in insurance policies. [Dkt. 54 at 19-21]. They rely on 36 O.S. § 3617, which generally prohibits insurance policies from limiting the time to bring an action to less than two years from accrual, except that "in property … policies such time shall not be limited to less than one (1) year from the date of occurrence of the event resulting in the loss." Plaintiffs contend that the wind and hail coverage at issue is properly classified as "casualty" insurance, not "property" insurance, such that the two-year minimum applies, and that any provision requiring suit within one year of loss is therefore void, leaving the default five-year contract limitations period.[20]

In support, plaintiffs rely heavily on _Wagnon v. State Farm Fire & Cas. Co._, 1997 OK 160, 951 P.2d 641, where the Oklahoma Supreme Court held that a theft under a multi-peril homeowner's policy was subject to § 3617's two-year minimum because theft coverage is defined as casualty insurance. _Id_. ¶ 13, at 646-47. Plaintiffs also point to the definitional provision of Title 36 and contend that wind and hail losses, particularly to personal property or glass, fall within various casualty categories, including the "miscellaneous insurance" provision of 36 O.S. § 707(11). They invoke the interpretive principles applied in _Wagnon_—that specific definitions control over general ones and that ambiguities regarding competing limitations

---

[20] _See_ 12 O.S. § 95 (establishing a five-year limitations period for breach of contract claims, measured from accrual of the cause of action); 15 O.S. § 216 (providing that contractual clauses restricting access to ordinary legal proceedings or shortening the time to enforce contractual rights are void).

11

periods should be resolved in favor of the longer period—and urge the Court to extend _Wagnon_'s approach to treat wind and hail coverage here as casualty insurance. _See id_., ¶¶ 10-12 & n.14, at 645-46.

State Farm responds that plaintiffs' reading stretches _Wagnon_ beyond its facts and text. [Dkt. 62 at 6-7]. _Wagnon_ addressed theft coverage, which is expressly classified as "burglary and theft insurance" in § 707(3), a specific type of casualty insurance. _Id_. ¶ 5, 951 P.2d at 643. By contrast, State Farm notes, wind and hail damage to a dwelling falls squarely within § 704's definition of "property insurance": insurance "on real or personal property of every kind … against loss or damage from any or all hazard or cause[.]" State Farm further points out that § 707(11)'s "miscellaneous" casualty category is residual, applying only to risks "not within any other kind of insurance as defined" in Article 7, and therefore cannot reasonably displace the express property-insurance definition in § 704. State Farm also cites federal decisions that have treated wind and hail roof claims under homeowners' policies as property losses and have applied § 3617's one-year minimum for property policies while enforcing one-year suit-limitation clauses. _See Gaddy_, 2025 WL 3124451, at *2; _Marshall_, 2025 WL 817606, at *2-3.

The Court finds State Farm's position more consistent with the statutory text and structure. _Wagnon_ does not hold that all perils under a homeowner's policy are casualty risks; it relied on the Legislature's express classification of burglary and theft as casualty coverage. Here, there is no similar statutory designation placing wind and hail coverage outside the property-insurance definition. To the contrary,

coverage for direct physical damage to a dwelling caused by wind or hail fits naturally within § 704's broad definition of property insurance. Nor can wind and hail coverage be recast as "miscellaneous" casualty insurance under § 707(11), which by its terms applies only where the risk is not encompassed by another defined class. Given the existence of an express property-insurance definition that encompasses this coverage, the residual casualty coverage category does not apply.

The Court therefore concludes that the Policy is one for "property" insurance for purposes of § 3617, and that § 3617 permits the Policy to limit actions to a period of not less than one year from the date of loss. The one-year suit limitation clause in plaintiff's Policy is consistent with § 3617 and is not void on that basis.

### 3.   Effect of 36 O.S. § 1250.5(7)

Finally, plaintiffs invoke 36 O.S. § 1250.5(7)—a 2022 amendment to the UCSPA providing that any policy specifying a time limit for wind or hail roof damage claims must allow the filing of claims for up to 24 months after the date of loss where the damage is not evident without inspection—and contend that, because the non-repairability of their roof was not evident without inspection, § 1250.5(7) requires that their Policy allow claims to be made within two years. [Dkt. 54 at 22-23]. They argue it would be "absurd" to construe the statutory scheme so that an insurer must accept a claim for 24 months, yet a contractual limitations period could bar suit after only one year. On this theory, § 1250.5(7), as the later-enacted and more specific statute, should override § 3617 and effectively require a suit-limitation period of at least two years for wind and hail roof claims subject to the amendment.

13

State Farm responds that § 1250.5(7) regulates only the time within which an insured may submit a claim to the insurer, not the time within which the insured must file suit. [Dkt. 49 at 14-16; Dkt. 62 at 7]. The provision appears within the UCSPA, which governs insurer conduct in adjusting claims and authorizes administrative enforcement by the Insurance Commissioner, but does not create private causes of action or prescribe suit-limitation periods. *See* 36 O.S. §§ 1250.3, 1250.14; *Walker*, ¶ 8, 849 P.2d at 1087. State Farm cites federal decisions harmonizing § 1250.5(7) with § 3617 by recognizing that the former governs claim-submission deadlines while the latter governs suit-limitations periods, and enforcing one-year suit limitations in property policies notwithstanding the two-year claim window for certain wind and hail claims. *See* *Root v. State Farm Fire & Cas. Co.*, No. CIV-23-870-PRW, 2024 WL 5239456, at *2 (W.D. Okla. Dec. 27, 2024); *Marshall*, 2025 WL 817606, at *3. State Farm also notes that plaintiffs reported their claim within days of the alleged loss, and this case does not present the paradigm of latent roof damage discovered long after the event.

The Court is not persuaded that § 1250.5(7) operates to extend or invalidate the suit-limitation clause here. The statutory text speaks in terms of when "claims" must be allowed to be filed and appears in a regulatory scheme addressing unfair claim-handling practices. It does not mention civil actions, limitations periods for suit, or § 3617. The Court's task is to give effect to all provisions where possible, which can be accomplished by reading § 1250.5(7) as governing claim-submission deadlines and § 3617, together with the Policy language, as governing the time to bring suit.

14

That construction respects the Legislature's choice of terminology and statutory placement and preserves § 3617's express authorization for property policies to include one-year suit-limitation provisions. Plaintiffs' "absurd result" argument rests on the possibility that, in some hypothetical case, a contractual suit limitation might expire before a claim arises, but that is not the situation presented here: plaintiffs reported their claim within three days of the loss, and State Farm's coverage position was communicated the following month. The Court declines to adopt a broad rule effectively rewriting § 3617 and the parties' contract based on speculative scenarios not before it. For these reasons, the Court concludes that § 1250.5(7) does not invalidate or extend the Policy's one-year suit-limitation period.

### 4.    Conclusion as to the Breach of Contract Claim

The suit-limitation provision in plaintiffs' homeowner's Policy is enforceable under Oklahoma law and requires that any action be brought within one year of the June 2023 loss. Plaintiffs did not file this lawsuit until March 2025, well outside that period. Plaintiffs' theories of waiver and estoppel do not create a genuine dispute of material fact, and their statutory arguments under §§ 3617 and 1250.5(7) do not render the contractual limitation void or inapplicable. State Farm is therefore entitled to judgment as a matter of law on plaintiffs' breach of contract claim based on the Policy's one-year suit-limitation provision.

The Court's conclusion that plaintiffs' breach of contract claim is barred by the Policy's suit-limitation clause resolves only the contractual cause of action. That ruling does not, by itself, extinguish plaintiffs' separate tort claim for bad faith, which

15

is governed by different elements and a different limitations period.[21] The Court therefore turns next to State Farm's motion insofar as it challenges the bad-faith claim on substantive grounds.

### B.   BAD FAITH

Under Oklahoma law, an insurer owes its insured an implied duty to deal fairly and act in good faith, and breach of that duty gives rise to a tort claim. To prevail, a plaintiff must show that (1) he was entitled to coverage under the policy, (2) the insurer lacked a reasonable basis for delaying or withholding payment, (3) the insurer failed to deal fairly and in good faith, and (4) the breach directly caused the plaintiff's injury. *See Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 25, 121 P.3d 1080, 1093. The "essence" of such a claim is the insurer's unreasonable conduct, including unjustified withholding of benefits. *See McCorkle v. Great Atl. Ins. Co.*, 1981 OK 128, ¶ 21, 637 P.2d 583, 587.

Courts generally analyze first-party bad-faith claims in two steps. First, the court considers whether there is a legitimate dispute between the parties as to coverage or the amount of the claim. If no legitimate dispute exists, a jury may infer bad faith from the denial or failure to pay. If a legitimate dispute does not exist, then, as a matter of law, "no reasonable inference of bad faith arises" from the denial alone, and the insured must come forward with additional evidence that the insurer did not actually rely on the legitimate dispute, denied the claim for an illegitimate reason,

---

[21] *See Hayes v. State Farm Fire & Cas. Co.*, 855 F. Supp. 2d 1291, 1301 (W.D. Okla. 2012) (*citing McCarty v. First of Georgia Ins. Co.*, 713 F.2d 609, 612 (10th Cir. 1983)) ("Plaintiff can pursue a bad faith claim with respect to defendant's handling of his [ ] loss, even though his breach of contract claim is time-barred"); *accord Gaddy*, 2025 WL 3124451, at *7.

failed to treat the insured fairly, or conducted an inadequate investigation. *See Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1440-42 (10th Cir. 1993) (applying Oklahoma law); *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1315-17 (10th Cir. 2019) (same); *Newport v. USAA*, 2000 OK 59, ¶¶ 9-11, 11 P.3d 190, 195-96. Where the bad-faith theory rests on inadequate investigation, the insured must show that material facts were overlooked or that a more thorough investigation would have produced relevant information undermining the insurer's position, and the evidence must suggest a "sham defense" or intentional disregard of uncontroverted facts before the issue may be submitted to a jury. *See Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012) (applying Oklahoma law); *Timberlake Const. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 345 (10th Cir. 1995) (same).

State Farm characterizes this case as a paradigmatic "legitimate dispute" over the scope of damage and whether the roof required replacement or could be repaired. [Dkt. 49 at 16-21; Dkt. 62 at 8-11]. It points out that its adjuster inspected plaintiffs' property shortly after the loss and concluded that the roof was repairable and that the resulting estimate fell below the deductible. When plaintiffs' contractor later asserted that the roof was not repairable, State Farm received and reviewed the contractor's photographs, the ITEL report confirming the availability of matching shingles, and a video of a repair attempt, yet maintained its view that the roof was repairable. In State Farm's view, this amounts to nothing more than a difference of opinion between its adjuster and plaintiffs' roofer on repairability and cost, which is the type of coverage disagreement Oklahoma law treats as a legitimate dispute not,

17

by itself, giving rise to bad faith. S*ee* *Manis v. Hartford Fire Ins. Co.*, 1984 OK 25, ¶ 12, 681 P.2d 760, 762; *Oulds*, 6 F.3d at 1436. State Farm further contends that its investigation was reasonable under the circumstances, that it was entitled to rely on its adjuster's inspection and its review of the contractor's materials, and that Oklahoma law does not require it to retain an engineer or roofing expert whenever a contractor disagrees with its conclusions. *See* *Roberts v. State Farm Mut. Auto. Ins. Co.*, 61 Fed. Appx. 587, 592 (10th Cir. 2003) (unpublished) (applying Oklahoma law); *Sellman v. Amex Assur. Co.*, 274 Fed. Appx. 655, 659 (unpublished) (same); *Shanta, Inc. v. Nautilus Ins. Co.*, No. CIV-15-872-R, 2017 WL 934720, at *4 (W.D. Okla. Mar. 8, 2017); *Covington v. CSAA Fire  Cas. Ins.*, No. CIV-19-718-PRW, 2020 WL 6265082, at *9-10 (W.D. Okla. Oct. 23, 2020).

Plaintiffs do not dispute this general framework, but contend that, on the particular facts here, a reasonable jury could find that State Farm's investigation and claim-handling were so inadequate and one-sided as to support an inference of bad faith. [Dkt. 54 at 24-30]. They argue that State Farm's initial decision rested on roof age, appearance, and assumptions about shingle availability, without any actual repairability testing. They further emphasize that, after their roofer repeatedly reported that shingles could not be removed without causing additional damage and provided photographs and video of failed repair attempts, State Farm declined to reinspect, did not collect the shingle sample offered for its review, and did not retain anyone with roofing expertise to test repairability. In plaintiffs' view, these omissions go beyond a simple disagreement with a contractor and amount to overlooking

18

material facts and refusing to undertake a reasonably appropriate investigation in light of information that directly challenged State Farm's initial assessment. Plaintiffs also distinguish *Shanta* and *Convington*[22] on the ground that those insurers conducted more robust investigations, including retaining engineers and sending multiple inspectors, whereas State Farm here did little beyond its initial inspection and paper review.

The standards governing inadequate-investigation bad-faith claims are exacting. It is not enough for plaintiffs to show that more could have been done, or that a jury might prefer their roofer's opinion over State Farm's adjuster. They must adduce evidence from which a jury could reasonably find that State Farm overlooked material facts, or that a more thorough investigation likely would have produced information undercutting its repair conclusion, and that the manner of investigation suggests a sham defense or intentional disregard of uncontroverted facts. *See Oulds*, 6 F.3d at 1440-42; *Shotts*, 943 F.3d at 1315-17; *Newport*, ¶ 10, 11 P.3d at 195. At summary judgment, the Court does not weigh competing opinions on repairability. Rather, it determines whether the record, viewed in plaintiffs' favor, presents conflicting evidence as to the reasonableness of State Farm's conduct from which different inferences may be drawn. *See Timberlake*, 71 F.3d at 1199.

---

[22] *See Shanta*, 2017 WL 934720, at *4 (granting summary judgment to insurer on bad-faith claim where a "repair versus replacement" dispute was supported by the adjuster's estimate and an engineer's report, and insured offered no evidence that a more thorough investigation would have produced facts undermining insurer's repair position); *Covington*, 2020 WL 6265082, at *8-10 (granting summary judgment to insurer on bad-faith claim where multiple inspections and an engineer's report rendered the investigation "undeniably thorough," the coverage denial based on policy exclusions was reasonable, and insured failed to show overlooked material facts or that a better investigation would have refuted insurer's basis for denial).

Applying these principles, the parties' positions present a close question. State Farm has shown that it inspected the property promptly, communicated its position, and later reviewed additional materials from plaintiffs' contractor before reaffirming its repairability determination. Plaintiffs, however, have identified evidence that State Farm never performed or commissioned any repairability testing of its own, declined to inspect the shingle sample or reinspect the roof after receiving contrary evidence, and did not engage a specialist despite knowing the dispute turned entirely on repairability. Taking these facts and reasonable inferences in plaintiffs' favor, a jury could conclude that State Farm's investigation fell short of what was "reasonably appropriate under the circumstances" and that it intentionally adhered to its initial assessment without adequately confronting uncontroverted evidence that repair efforts were causing further damage.

Because the reasonableness of an insurer's investigation and claim-handling is typically a fact-intensive inquiry, and because the record here contains conflicting evidence from which different inferences may be drawn as to whether State Farm had a reasonable, good-faith basis for maintaining its repair position, the Court cannot say as a matter of law that no reasonable jury could find bad faith. Accordingly, State Farm is not entitled to summary judgment on plaintiffs' bad-faith claim, and that claim will proceed to trial.

## V.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs move for summary judgment on their breach of contract claim, arguing that State Farm is liable as a matter of law for failing to pay benefits

20

allegedly owed under the Policy for June 2023 storm loss. [Dkt. 50 at 15-16, 20-27]. As discussed above, the Policy contains a one-year suit-limitation provision, and plaintiffs did not file this lawsuit until well outside that contractual period. The Court concluded that the suit-limitation clause is valid and enforceable under Oklahoma law, that plaintiffs' breach of contract claim is therefore time-barred, and that State Farm is entitled to judgment as a matter of law on that claim. Because the contract claim fails on this dispositive limitations ground, plaintiffs cannot obtain affirmative summary judgment on liability for the same cause of action. Accordingly, plaintiffs' motion is denied to the extent it seeks judgment on their breach of contract claim.

Plaintiffs also seek partial summary judgment on their bad-faith claim, asking the Court to enter judgment in their favor on liability and leave only damages for trial. [Dkt. 50 at 17-20, 27-28]. As set out above, because the summary-judgment record admits to more than one reasonable view as to whether State Farm had a good-faith basis for its conduct, plaintiffs are not entitled to judgment as a matter of law on the bad-faith claim. The same factual disputes that preclude summary judgment in State Farm's favor necessarily preclude partial summary judgment in plaintiffs' favor on liability. Accordingly, plaintiffs' motion is denied to the extent it seeks partial judgment on their bad-faith claim.

## VI.    CONCLUSION

IT IS THEREFORE ORDERED that State Farm's motion for summary judgment [Dkt. 49] is hereby **GRANTED in part** and **DENIED in part**.

IT IS FURTHER ORDERED that plaintiffs' motion for partial summary

judgment [Dkt. 50] is hereby **DENIED**.

DATED this 23rd day of June, 2026.

_____

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE